

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00051-CV

JERRY LAZA, Appellant

V.

CITY OF PALESTINE, TEXAS, Appellee

On Appeal from the 349th District Court
Anderson County, Texas
Trial Court No. DCCV16-356-349

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In response to a lawsuit by the City of Palestine, Texas,[1] alleging that Jerry Laza violated various City ordinances by improperly maintaining specific properties of his within the City and unlawfully keeping junk, vehicles, equipment, and other unsightly items on those tracts, Laza interposed numerous and varied procedural defenses over time. After the jury made a number of findings against him[2] and a number of trial court rulings went against him, Laza's energetic struggle in the trial court proved unsuccessful. Laza now appeals. We affirm the City's judgment because (1) the trial court had jurisdiction to enter judgment and post-judgment orders, (2) the trial court did not err in denying Laza's Rule 12 motion to show authority, (3) Laza

---

[1]Originally appealed to the Twelfth Court of Appeals in Tyler, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]The jury found that:

- Laza displayed lawn mowers or other equipment in front of his primary building at 1101 West Oak or 1019 West Oak, for which the jury assessed a penalty of $18,250.00;
- Laza stored lawn mowers and other equipment within ten feet of the property line of the City's property, for which the jury assessed a penalty of $365.00;
- Laza stored lawn mowers and other equipment outside and on an unimproved surface, for which the jury assessed a penalty of $365.00;
- Laza kept junk motor vehicles on his property, for which the jury assessed a penalty of $16,425.00;
- Laza used and maintained his property as a junkyard or a salvage yard, for which the jury assessed a penalty of $31,025.00;
- Laza used certain of his property in his business as a lawn mower repair shop, for which the jury assessed a penalty of $3,650.00;
- Laza kept a horse or goats in a non-agricultural area, for which the jury assessed a penalty of $1,825.00;
- Laza failed to maintain the grass and weeds on certain of his properties at a height of less than twelve inches, for which the jury assessed a penalty of $9,125.00;
- Laza failed to keep the buildings, grounds, and premises at certain of his properties free of garbage, trash, and rubbish, for which the jury assessed a penalty of $27,375.00;
- Laza failed to dispose of articles and accumulations that have caused certain of his properties to become unsanitary and unsightly, for which the jury assessed a penalty of $27,375.00; and
- Laza maintained certain of his property in a manner that created rat harborage, for which the jury assessed a penalty of $23,375.00.

procedurally waived any complaints regarding the trial court's denial of his special exceptions, (4) Laza failed to preserve his claimed jury charge error, (5) the motion to recuse was properly denied, and (6) there is no basis on which to vacate the judgment.[3]

In this appeal, Laza does not challenge any of the jury's findings. Based on the jury's findings, the trial court entered a judgment assessing civil penalties, prohibited Laza from operating a junkyard or salvage yard on his properties, and granted other injunctive relief.

The resolution of the issues before us requires a brief discussion of the development of the underlying litigation. In its lawsuit against Laza, the City sought injunctive relief and civil penalties, alleging that Laza used certain properties as junk and salvage yards in violation of various city codes and zoning ordinances. Laza filed counterclaims against the City alleging violations of his federal civil rights and violations of the Texas Open Meetings Act (TOMA), among other things. After the trial court severed Laza's counterclaims from the remainder of the lawsuit, the City removed the severed action to federal court. The City's claims against Laza

---

[3]The City filed a motion to dismiss this appeal on the basis that (1) Laza admitted the validity of the City's judgment in his bankruptcy case and is now judicially estopped from taking the opposite position in this appeal, or (2) Laza made a voluntary, substantial payment on the City's judgment in his bankruptcy case and has waived his right to appeal the judgment. In support of its arguments, the City alleges that (1) after the City obtained a judgment lien, Laza fraudulently transferred all of his real property except his homestead; (2) after fraudulently transferring all his real property except his homestead, Laza filed a Chapter 7 bankruptcy case; (3) the bankruptcy court lifted the stay for the City to pursue criminal penalties against Laza; (4) the trustee recovered the real property that Laza fraudulently transferred before he filed bankruptcy; (5) the bankruptcy court's order of discharge did not discharge the City's judgment and lien; (6) the trustee and the City entered into a settlement—subject to the bankruptcy court's approval—under which the trustee agreed to dismiss this appeal; (7) as a result of Laza's representations, the trustee backed out of the settlement with the City and entered into a settlement with Laza; (8) as a result of Laza's representations, the bankruptcy court approved the trustee's settlement with Laza; (9) from Laza's settlement payment, the trustee paid $130,319.25 on the City's judgment against Laza; (10) on Laza's request, the Court reinstated this appeal. Because we have jurisdiction over this appeal, we decline to delve into the facts of Laza's bankruptcy and choose, instead, to decide this case on the merits of the appeal. We, therefore, deny the City's motion to dismiss this appeal.

proceeded to a jury trial. The trial court entered a judgment on the jury's verdict awarding the City $163,155.00 and granting the City's requested injunctive relief.

*(1)    The Trial Court Had Jurisdiction to Enter Judgment and Post-Judgment Orders*

Laza claims that all proceedings in the trial court—including the jury trial, the judgment, and post-judgment orders—were void based on the prior removal of what he contends was the entire case to federal court. We examine the circumstances of the severance and removal to determine whether the trial court retained jurisdiction—post removal—over the City's claims against Laza.

On August 18, 2017, in advance of the September 18, 2017, trial date, Laza filed his third amended original answer and original counterclaim and petition for relief, seeking damages and a demand for jury trial. Laza's original counterclaim alleged causes of action for breach of contract, declaratory relief, and inverse condemnation. In the alternative, Laza claimed an unlawful taking under the Constitution of the United States and the Constitution of the State of Texas. Laza asserted that his counterclaims were brought pursuant to "United States Constitution Article 1 Section 10 and 42 U.S.C.A. § 1983" and alleged "violations of [his] civil rights as guaranteed by the Contracts Clause and Fourteenth Amendment to the United States Constitution and in violation of the Texas Constitution art. 1, § 17."

Also, on August 18, 2017, Laza filed his fourth amended original answer and first amended counterclaim. The first amended counterclaim included new claims alleging violations of TOMA against new parties, including the city administrator, the city attorney, and "Defendant, John or Jane Does 1-9, City Council Persons." On August 21, 2017, less than thirty

4

days before the scheduled trial date, Laza filed his fifth amended original answer and second amended counterclaim.[4] The second amended counterclaim did not assert any new claims or add any new parties.

The City filed a motion to strike and, in the alternative, to sever Laza's first and second amended counterclaims on the basis that those filings failed to comply with the trial court's scheduling order setting forth a May 10, 2017, deadline for filing amended pleadings asserting new claims or defenses. The City alleged that the newly added causes of action in the first amended counterclaim lacked merit. It also argued that both the first and second amended counterclaim, which added no additional causes, were designed to delay the proceedings in the trial court. It therefore asked the trial court to strike the new counterclaims or, in the alternative, to "sever Laza's counterclaims from the claims made by the City of Palestine, which [had] been ready for trial for several months."

On September 15, 2017, the trial court entered a severance order, stating,

Defendant Jerry Laza's First and Second Amended Counterclaims would, if not severed, inevitably delay the initial lawsuit.

ACCORDINGLY, it is hereby ordered that the counterclaims filed by defendant and Counter-Plaintiff in Defendant Jerry Laza's Fifth Amended Original answer and Defendant Jerry Laza's Second Amended Counterclaim Preservation of Counterclaim, and Petition for Relief and Inverse Condemnation and violation of Texas Open Meetings Act, Seeking Damages, Alternative Damages and Demand for Jury Trial which were new and additional counterclaims and which were not pled in Defendant's Pleadings before the filing of Defendant Jerry Laza's Fourth Amended Original Answer and Defendant Jerry Laza's Second Amended Counterclaim, and Petition for Relief and Inverse Condemnation and violation of

---

[4]Laza styled that pleading "Defendant Jerry Laza's Fifth Amended Original Answer and Defendant Jerry Laza's Second Amended Counterclaim, Preservation of Counterclaim, And Petition For Relief And Inverse Condemnation And Violation Of Texas Open Meetings Act, Seeking Damages, Alternative Damages And Demand For Jury Trial."

> Texas Opens Meetings Act, Seeking Damages and Demand for Jury Trial be and the same are hereby severed into a separate suit, which shall be given the Cause Number DCCV16-349A.

On September 18, 2017, the City removed the severed action, cause number DCCV16-356-349A, to the United States District Court for the Eastern District of Texas under docket number 6:17-cv-00533-RWS.

Meanwhile, the City's claims against Laza proceeded in the 349th Judicial District Court of Anderson County under cause number DCCV16-356-349. In conjunction with that case, the trial court conducted a hearing October 12, 2017, "regarding the jurisdiction of the Court following the removal to Federal Court of those counterclaims which had been severed into a separate cause no: Cause No. DCCV16-356-349A." At that hearing, Laza argued that the federal court had "complete" jurisdiction over the case and that the "State Court's jurisdiction over the action [was] suspended from the moment of removal." Counsel for the City pointed out that the notice of removal specifically removed cause number DCCV16-356-349A, but the state court matter was cause number DCCV16-356-349. That cause number, the City argued, did not include any of the actions that were severed and subsequently removed to federal court. Contrarily, Laza argued that the severance order severed only "the difference between the third and the fifth." The trial court responded, "[W]hat I said I would do is I would sever all the counterclaims which were newly alleged in the Fourth and Fifth Amended Answer. So that anything that was in the Fifth that was not in the Third was going to be severed."

. . . .

6

> My order very clearly says the only thing I'm severing are the counterclaims, the ones that are in the Fifth, but weren't in the Third. That's the only thing that was severed from the existing suit.

The trial court stated that only the severed case, "which included some counterclaims," was removed to federal court. The court concluded that, since only the severed case was removed, it had jurisdiction of the City's claims against Laza.

At the hearing, the court raised the question of which precise counterclaims were severed from the remainder of the case to determine which counterclaims were removed to federal court. To make that determination, the trial court indicated that it would be necessary to construe its severance order. Counsel for the City suggested that it was unnecessary to construe the order. Instead, the City took the following position: "[A]ll you have to do is look at the Third Amended Answer and [original] counterclaim. If it's in there, it's in this case. If it's not in there, it's either never been [pled] or it was [pled] later and it's been . . . severed." The trial court determined that it had jurisdiction over the City's claims against Laza in the non-severed case.

In a further effort to end the proceedings in the trial court, Laza filed a motion for emergency stay on October 16, 2017, in conjunction with a previous petition for a writ of mandamus that he had filed in the 12th Court of Appeals in Tyler.[5] In his emergency motion,

---

[5]On the same day, the trial court issued its order for a separate trial of "all counterclaims of Jerry Laza against the City of Palestine and all cross-claims of Jerry Laza against other parties" because "there [was] uncertainty regarding which claims were severed into Cause No. DCCV16-356-349A, and which claims remain[ed] in . . . Cause No. DCCV16-356-349." After the trial concluded, the City filed a second motion to sever. The trial court granted that motion on March 9, 2018, severing all counterclaims "pending in [that] Court filed by Counter-Plaintiff, Jerry Laza . . . into a separate suit which [was] given the Cause Number DCCV16-356-349-B."

7

Laza claimed that the trial court lacked jurisdiction.[6]   Among other things, Laza's emergency

motion alleged:

- On 18 September 2017, the City of Palestine filed a notice of removal in the Cause Number DCCV16-356-349A, claiming that there is a pleading in that cause number.  See Exhibit A 349A Case Summary A, DCCV16-356-349A. [sic] and Exhibit B Fed Docket Report 10 Oct 2017; CASE #:  6:17-cv-00533-RWS.

- The only pleading attached to the Notice of Removal is from Cause Number DCCV16-356-349.

- Relator will be irreparably harmed if the case is tried while the trial court does not have Subject Matter Jurisdiction.   See Exhibit F [5] Motion hearing and emergency and exhibits 1-4 in CASE #:  6:17-cv-00533-RWS.

The federal docket for cause number 6:17-cv-00533-RWS lists the following documents

filed in conjunction with the notice of removal "by the City of Palestine, Texas from 349th

Judicial District Court of Anderson County, Texas, cause number DCCV16-356-349A":

- Laza's First Amended Counterclaim

- Laza's Second Amended Counterclaim

---

[6]The City has requested this Court to take judicial notice of the certified records in the following matters included in its appendix:

- *In re Jerry D. Laza*, No. 18-60485, in the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division
- *Jason R. Searcy, Trustee v. VEREIN #4722931287513499012783, L.C.*, No. 18-06007, in the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division
- *Laza v. City of Palestine, Texas, et al.*, in the United States District Court for the Eastern District of Texas, Tyler Division, case number 6:17-cv-00533-JDL
- *In re Jerry Laza*, case number 12-17-00280-CV, in the Twelfth Court of Appeals

"The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b)(2).  "The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." TEX. R. EVID. 201(c)(2). At appellee's request, we take judicial notice of the certified records from the listed proceedings. *See In re Estate of Hutto*, No. 06-05-00100-CV, 2006 WL 541031, at *1 (Tex. App.—Texarkana Mar. 7, 2006, no pet.) (mem. op.); *Antonov v. Walters*, 168 S.W.3d 901, 903 n.1 (Tex. App.—Fort Worth 2005, pet. denied); *Sparkman v. Kimmey*, 970 S.W.2d 654, 659 (Tex. App.—Tyler 1998, pet. denied).

- City of Palestine's Motion to Strike

- Order Granting City of Palestine's Motion to Sever

In addition, the following documents were listed on the federal court docket as also having been filed in the federal case:

- Complaint against City of Palestine, Texas, filed by Jerry Laza. (Originally filed in state court as "Fifth Amended Original Answer and Second Amended Counterclaim . . . and Demand for Jury Trial.").

- City of Palestine's Answer to Complaint (2nd Amended Counterclaim and Petition for Relief and Inverse condemnation and Violation of Texas open Meetings Act) by City of Palestine, Texas.

In a nutshell, Laza claimed that the City removed cause number DCCV16-356-349 because the trial court documents attached to the notice of appeal—listed above—contained the cause number DCCV16-356-349 and not cause number DCCV16-356-349A. Therefore, according to Laza, there was nothing to remove in cause number DCCV16-356-349A.

The Tyler Court thereafter issued a letter to Laza in reference to trial court cause number DCCV16-356-349, indicating that, "due to the removal of the case to federal court, [the Tyler] Court [would] take no action on said [emergency] motion." On December 15, 2017, the Tyler Court issued a jurisdictional defect letter to Laza stating, "[I]t appears that the City of Palestine filed a notice of removal to federal court on September 18, 2017." The Court advised Laza that, as indicated in the emergency motion, it did not appear that the court had jurisdiction based on the removal to federal court. Laza was further advised that the petition would be dismissed unless Laza could "show the jurisdiction of [that] Court." In a memorandum opinion stating that it received no response to the jurisdictional defect letter, the Tyler Court dismissed Laza's

9

petition and motion for emergency stay for want of jurisdiction because "the city's notice of removal effected the removal and vested the federal court with exclusive jurisdiction over the case." *In re Laza*, No. 12-17-00280-CV, 2018 WL 271833, at *1 (Tex. App.—Tyler Jan. 3, 2018, orig. proceeding) (citing 28 U.S.C. 1446(d)).

Based on the Tyler Court's pronouncement that the notice of removal vested the federal court with exclusive jurisdiction over the case, Laza claims here that the trial court lost jurisdiction of the entire case below once it was removed to federal court on September 18, 2017. Laza further contends that the law of the case doctrine dictates that our determination of whether the trial court retained jurisdiction of the case following the notice of removal is governed by the Tyler Court's pronouncement. We disagree.

*(a)  The Law of the Case Doctrine Does Not Prevent our Examination of Jurisdiction*

"The 'law of the case' doctrine provides that a decision of a court of last resort on a question of law will govern a case throughout its subsequent stages." *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006) (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). The doctrine

> is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. The doctrine is based on public policy and is aimed at putting an end to litigation.

*Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003) (quoting *Hudson*, 711 S.W.2d at 630). As a result, "a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case." *Id.* Even so, "[a] decision rendered on an issue before the

appellate court does not absolutely bar re-consideration of the same issue on a second appeal." *Id.* "Application of the doctrine lies within the discretion of the court, depending on the particular circumstances surrounding that case." *Id.* The Texas Supreme Court has also "long recognized as an exception to the law of the case doctrine that if the appellate court's original decision is clearly erroneous, the court is not required to adhere to its original rulings." *Id.*

This Court has previously recognized that the law of the case doctrine applies only "to matters that are fully litigated and determined on appeal." *Sherer v. Sherer*, 393 S.W.3d 480, 486 n.13 (Tex. App.—Texarkana 2013, pet. denied) (citing *Briscoe*, 102 S.W.3d at 716); *see Visage v. Marshall*, 763 S.W.2d 17, 19 (Tex. App.—Tyler 1988, no writ) (parties bound by matters fully litigated and determined in order). Because "a mandamus . . . is not an appeal . . . [t]he denial of mandamus relief is not an adjudication on the merits and does not prevent reconsideration of the matter in a subsequent appeal." *Sherer*, 393 S.W.3d at 486 n.13 (citing *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007)).

Here, the Tyler Court seemingly addressed the merits of the dismissal of the petition and motion when it stated that the federal court had exclusive jurisdiction over the case based on the notice of removal. Even so, that issue was not fully litigated. We do not, therefore, find that the law of the case doctrine applies here due to the Tyler Court's mandamus opinion. As a result, we will address the merits of the jurisdictional issue.

### (b)     *The Notice of Removal Effected the Removal of Only the Severed Case*

"Any claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. "The effect of a severance is to divide a lawsuit into two or more independent suits that

11

will be adjudicated by distinct and separate judgments." *Levetz v. Sutton*, 404 S.W.3d 798, 802–03 (citing *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex. 1985)). "The controlling reasons to allow a severance" are "avoiding prejudice, doing justice, and increasing convenience." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007).

The trial court's severance order purported to sever only Laza's first and second amended counterclaims and assigned cause number DCCV16-356-349A to the severed action. The civil docket sheet for cause number 6:17-cv-00533-RWS filed in the United States District Court for the Eastern District of Texas indicates that the notice of removal was filed by the City of Palestine "from the 349th Judicial District Court of Anderson County, Texas, case number DCCV16-356-349A." The order granting the City of Palestine's motion to sever was filed in conjunction with the notice of removal. Also included as exhibits to the notice of removal were Laza's first and second amended counterclaims.

Laza's claim that the entire case was removed to federal court, based on the assertion that the counterclaims attached to the notice of removal did not bear cause number DCCV16-356-349A, is meritless. *See McRoberts v. Ryals*, 863 S.W.2d 450, 452–53 (Tex. 1993) ("order granting a severance . . . is effective when signed . . . without the district clerk's creation of a separate physical file with a different cause number"). Those counterclaims were assigned the new cause number DCCV16-356-349A and were removed to federal court under the notice of removal designating that cause number. It is also clear from the record that none of the City's claims against Laza were severed and none of the City's claims against Laza were removed to

12

federal court. The question of the trial court's jurisdiction should end there, but Laza has raised one final argument.

In a last-ditch effort to convince this Court that the trial court lacked jurisdiction based on the removal, Laza contends that the severance order effected the removal of only the differences between the first and second amended counterclaims. Because the second amended counterclaim did not assert claims not previously asserted and did not add parties not previously named in the first amended counterclaim, Laza claims that nothing was removed to federal court under cause number DCCV16-356-349A. He claims that, as a result, the entire case was removed under cause number DCCV16-356-349 to federal court, leaving the trial court with no jurisdiction over the City's claims against him. This claim is specious and wholly without merit.

In 2017, the federal court decided that the only matters removed to that court bore cause number DCCV16-356-349A. In its order, the federal court stated,

> The pleadings before this Court are based on the City of Palestine's Notice of Removal from Cause No. DCCV16-356-349A, in the 349th Judicial District Court, Anderson County, Texas, for claims invoking a federal question pursuant to 28 U.S.C. § 1441(a). . . . Pursuant to the Notice of Removal, the live complaint before this Court is Docket No. 3, which was originally filed in state court as Plaintiff's "Fifth Amended Original Answer and Second Amended Counterclaim." . . . This is the only live pleading filed before this Court and one that indeed asserts claims arising under the United States Constitution and 42 U.S.C. § 1983. . . . To the extent there is a discrepancy regarding what counterclaims were severed in state court by virtue of the state court judge's severance order, *no motion to remand was timely brought on that basis.*
>
> As it stands, on the pleadings before this Court, the Court finds that the allegations in the complaint (filed originally as "Fifth Amended Original Answer and Second Amended Counterclaim"[]) that invoke federal jurisdiction have been properly removed to this Court.

(Emphasis added).

13

There can be no question that—as was undoubtedly apparent to Laza when the federal court issued its order in 2017—Laza's fifth amended original answer and second amended counterclaim was properly removed to federal court under cause number DCCV16-356-349A.[7]

Consequently, we conclude that the trial court had jurisdiction over all claims in cause number DCCV16-356-349. Because the trial court retained jurisdiction of the City's claims

---

[7]In its memorandum opinion and order issued on March 29, 2022, in which the federal court denied Laza's motion for summary judgment, the court outlined the following history of the case:

> Upon removal, Plaintiff Jerry Laza immediately petitioned this court for an emergency hearing seeking clarity on what was removed to federal court. . . . The court found that Plaintiff's "Fifth Amended Original Answer and Second Amended Counterclaim" filed in state court included allegations that invoked federal question jurisdiction. . . . Nonetheless, certain related state court claims remained in state court about to go to trial. As a result, the court stayed this action, but ordered Plaintiff to file an amended complaint delineating the federal claims he intended to assert in this matter. On December 15, 2017, Plaintiff filed an amended complaint in this matter. . . .

> The case remained stayed before this court while the court received status reports from the parties on the state court action and the desire to proceed with the federal claims before this court. On January 25, 2019, Plaintiff filed a suggestion of bankruptcy in this case. . . . Plaintiff had filed a Chapter 7 Bankruptcy petition in the Bankruptcy Court for the Eastern District of Texas. *See In Re Jerry D. Laza*, No. 18-60485 (Bankr. E.D. Tex. 2018). As a result, the claims asserted before this court became an asset of the bankruptcy estate and the trustee became the real party in interest. Accordingly, the court added trustee Michelle Chow to this case and administratively closed the action pending bankruptcy proceedings. . . . Chow continued to provide the court status updates on the bankruptcy proceedings. . . . On October 1, 2020, Ms. Chow informed the court that Plaintiff and Chow reached a settlement approved by the United States Bankruptcy Court for the Eastern District of Texas whereby Chow abandoned the estate's interest in the case and Plaintiff's interest in the federal claims was returned to him.

> On February 15, 2021, following an order for a status update on the case, Plaintiff informed the court that he had retained counsel and would proceed with claims under 42 U.S.C. § 1983 and the Texas Open Meetings Act ("TOMA"). . . . On the same day, the court ordered Plaintiff to file and serve his amended complaint within fourteen days. . . . On March 9, 2021, Plaintiff filed his amended complaint with six causes of action against previously named Defendants. . . . This amended complaint remains to be the live complaint in this action.

Any issues regarding the propriety of the trial court's severance are moot, in light of the federal court's opinion resolving the claims removed to that court.

14

against Laza, the trial court's judgment and post-judgment orders in the non-severed action are not void and are valid and enforceable.[8]

*(2)    The Trial Court Did Not Err Denying Laza's Rule 12 Motion to Show Authority*

In the trial court, Laza filed a "Motion to show Authority and Request for Emergency Hearing," claiming that Ronald Stutes, "the alleged said attorney for CITY OF PALESTINE," did not have authority to represent the City because he was "acting without due authority of the City of Palestine's duly elected city council." Laza claimed that, because "the City Council of the City of Palestine ha[d] never authorized the actions described in the Original or Amended petitions in [the] case," Stutes was "prosecuting this suit without the authority of the CITY OF PALESTINE."

The trial court held a hearing on Laza's motion at which attorney Stutes testified as follows:

> [M]y name is Ronald Suttts [sic], I'm an attorney, I've been licensed since 1985, and I am now a member of the law firm of Potter Minton in Tyler, Texas. Approximately 11 years ago, I think it was 2006, I was hired by the City of Palestine to be the city attorney for the City of Palestine, and I've been since 2006. The city charter says that the -- says that the city attorney is authorized to bring and defend all litigation on behalf of the City of Palestine.
>
> I presume -- presented you the affidavit of Mike Alexander,[9] who's the city manager of the City of Palestine and he states that I am the city attorney and I am

---

[8]Based on our resolution of this issue, we deny Laza's March 2, 2022, motion to vacate and to dismiss this appeal. We likewise deny Laza's March 14, 2022, motion to reconsider jurisdictional matters.

On March 9, 2018, the trial court entered a second severance order in which it ordered that "all counter-claims now pending in this Court filed by Counter-Plaintiff, Jerry Laza, be and the same are hereby severed into a separate suit which shall be given the Cause Number DCCV16-356-349-B," and, as a result, "the judgment entered by the Court in Cause Number DCCV16-356-349 is now a final judgment."

[9]Although considered by the trial court, Alexander's affidavit was not made a part of the record in this case. His affidavit is included in the appendix to Laza's petition for a writ of mandamus filed in *In re Jerry Laza*, cause number 12-17-00280-CV, in the Twelfth Court of Appeals, the certified record of which we have judicially noticed.

15

authorized to represent the city, and that he has authorized the filing of this lawsuit. That concludes my testimony.

The trial court took judicial notice of the Palestine, Texas, Code of Ordinances, as it existed at the time of the hearing. This Court likewise takes judicial notice of the City's code of ordinances.[10] As it pertains to this issue, the city charter stated that "the city attorney shall represent the city in all litigation and controversies." The city attorney likewise was charged with the "duty to see that all penal ordinances of the city [were] impartially enforced." CITY OF PALESTINE, TEX., CODE OF ORDINANCES, pt. 1, art. VIII, sec. 8.7 (2020), https://library. municode.com/tx/palestine/codes/code_of_ordinances?nodeId=PTICH_ARTVIIIOFEM_S8.7CI AT.[11]

---

Alexander testified that he was the city manager for the City of Palestine and that Stutes was "the appointed City Attorney for the City of Palestine." He explained, "Under the City Charter of the City of Palestine, the City Attorney is authorized to represent the City in all litigation and controversies." He further testified that Stutes "was authorized to file the lawsuit against Jerry Laza and [was] authorized to prosecute such suit." Alexander's affidavit testimony does not include adjudicative facts that can be judicially noticed under Rule 201 of the Texas Rules of Evidence. *See* TEX. R. EVID. 201.

[10]Courts may take judicial notice of the provisions of city charters. *Air Curtain Destructor Corp. v. City of Austin*, 675 S.W.2d 615, 618 (Tex. App.—Tyler 1984, writ ref'd n.r.e.); *Lowther v. Fernandez*, 668 S.W.2d 886, 888 (Tex. App.—San Antonio 1984, no pet.); *Cone v. City of Lubbock*, 431 S.W.2d 639, 647 (Tex. App.—Amarillo 1968, writ ref'd n.r.e.); *McKee v. City of Mt. Pleasant*, 328 S.W.2d 224 (Tex. App.—Texarkana 1959, no writ); *Hayden v. City of Houston*, 305 S.W.2d 798 (Tex. App.—Fort Worth 1957, writ ref'd n.r.e.).

[11]This section of the City's charter contains one directive, which reads:

> Whenever it shall be brought to the city attorney's knowledge through the affidavits of 10 creditable persons that any persons, firms or corporations exercising or enjoying any franchise or privilege from the City of Palestine have been guilty of a breach of any condition of such franchise or privilege, or have failed to comply in any material manner with the terms and stipulations of such franchise or privilege, it shall be the city attorney's duty to report the breach or failure to comply to the city council, together with all relevant facts. If the city council shall determine that the complaints are well founded, it shall be the city attorney's duty to take such actions as may be necessary, and in the event the offending corporation, firm, or person shall fail or refuse to conform to the orders of the council, *it shall be the duty of the council to direct the city attorney to institute suit in the court having jurisdiction against such corporation, firm, or person, for a judgment of forfeiture or franchise or privilege, or any other proper judgment.*

At the hearing, it was uncontested that there was never a city ordinance or resolution from the city council that authorized the filing of the *specific lawsuit* against Laza. Laza claimed such ordinance or resolution was required for Stutes to file a lawsuit against him. The trial court disagreed and denied the motion. On appeal, Laza claims that, because the City "failed to produce any ordinance or resolution from the city council granting authority to prosecute the suit or hiring or retention of the lawyer purport[ing] to act on its behalf," the trial court abused its discretion in denying his Rule 12 motion to show authority.

Rule 12 allows a party "by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act." TEX. R. CIV. P. 12. "At the hearing on the motion, the burden of proof shall be on the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party." *Id.* If the challenged attorney fails to show sufficient authority, "the court shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears." *Id.* "The primary purpose of rule 12 is to enforce a party's right to know who authorized the suit." *In re Guardianship of Benavides*, 403 S.W.3d 370, 373 (Tex. App.—San Antonio 2013, pet. denied) (citing *Angelina Cnty. v. McFarland*, 374 S.W.2d 417, 422–23 (Tex. 1964)).

Appellate courts generally review a trial court's ruling under Rule 12 for an abuse of discretion. *See Urbish v. 127th Jud. Dist. Ct.*, 708 S.W.2d 429, 432 (Tex. 1986); *Montalvo v.*

---

CITY OF PALESTINE, TEX., CODE OF ORDINANCES, pt. 1, art. VIII, sec. 8.7 (2020), https://library.municode.com/tx/palestine/codes/code_of_ordinances?nodeId=PTICH_ARTVIIIOFEM_S8.7CIAT (emphasis added). Laza argues that the italicized language indicates that the city council must have directed Stutes to file the lawsuit against Laza. That language, when read in context, only applies in the instances specifically described.

*Guerra*, No. 13-18-00565-CV, 2020 WL 7393434, at *4 (Tex. App.—Corpus Christi Dec. 17, 2020, pet. denied) (mem. op.); *Benavides*, 403 S.W.3d at 373; *R.H. v. Smith*, 339 S.W.3d 756, 762 (Tex. App.—Dallas 2011, no pet.). "We defer to the trial court on factual findings and review legal conclusions de novo." *City of San Antonio v. River City Cabaret, Ltd.*, 32 S.W.3d 291, 293 (Tex. App.—San Antonio 2000, pet. denied). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

The City relies on the language of its charter, stating that "the city attorney shall represent the city in all litigation and controversies," to conclude that Stutes was authorized to file and prosecute this suit on behalf of the City absent any resolution or ordinance of the city council directing him to do so. In support of this claim, the City relies on *City of San Antonio v. Aguilar*, 670 S.W.2d 681 (Tex. App.—San Antonio 1984, writ dism'd). In *Aguilar*, the city attorney for San Antonio appealed a lawsuit to our sister court in San Antonio. Aguilar filed a motion to dismiss the lawsuit for want of jurisdiction based on the claim that the city attorney was not authorized by the city council to pursue the appeal. *Id.* at 682. In its examination of this issue, the court recognized the existence of an agency-principal relationship between the city attorney and the city. *Id.* at 683. It recognized:

> Express authority exists where the principal has made it clear to the agent that he wants the act under scrutiny to be done. H. Reuschlein & W. Gregory, AGENCY AND PARTNERSHIP, § 14 (1979); implied authority exists where there is no proof of express authority, but appearances justify a finding that in some manner the agent was authorized to do what he did; in other words, there is circumstantial proof of actual authority. *Id.* at § 15.

18

*Id.* at 683–84.  The court recognized language from the city charter that authorized the city attorney to perform "all services incident to his position" as "a broad grant of implied authority." The city attorney, therefore, had the implied authority to pursue the appeal because it fell within the charter's "broad grant of implied authority."  *Id.* at 684.  As a result, the court concluded, where "the city attorney ha[d] authority derived from the city charter to represent the city in all legal proceedings, the city council [was] not required to pass a resolution or an ordinance as a prerequisite to an appeal."  *Id.* at 686.

It is also true that the *Aguilar* court recognized that "an attorney who has conducted a case in the trial court is presumed to have authority to pursue an appeal, although this presumption can be rebutted."  *Id.* at 684 (citing *Stephenson v. Chappell*, 33 S.W. 880 (Tex. App.—Dallas 1896, no writ); 7 TEX. JUR. 3d *Attorneys at Law* § 63 (1980)).  This reasoning, though, was not necessary to the disposition of the appeal, as the court had already determined that "the city attorney possessed the implied authority to pursue the appeal."  *Id.*

Although *Aguilar* involved the authority of the city attorney to file an appeal rather than the authority to file a lawsuit, we find its reasoning and logic persuasive.  The language of the city charter stating that "the city attorney shall represent the city in all litigation and controversies" is a broad grant of implied authority authorizing the city attorney to file the suit against Laza.  Certainly, appearances justify a conclusion that the city attorney was authorized to file the lawsuit.  In addition to the circumstantial evidence of actual authority, Stutes testified, without objection, that he was expressly authorized by the city manager to file the lawsuit.  Even if express authorization by the city manager is not sufficient, as Laza argues, to authorize the

19

filing of the lawsuit, it is additional circumstantial proof of actual authority. *See Aguilar* at 683–84.

The city charter likewise charged the city attorney with the "duty to see that all penal ordinances of the city [were] impartially enforced." CITY OF PALESTINE, TEX., CODE OF ORDINANCES, pt. 1, art. VIII, sec. 8.7 (2020), https://library.municode.com/tx/palestine/codes/code_of_ordinances?nodeId=PTICH_ARTVIIIOFEM_S8.7CIAT. In this case, the City's petition requested the enforcement of the following city ordinance: "It shall be unlawful for a person to maintain a public nuisance as determined under this section. . . . A person who violates this section shall, on conviction, be punished by a fine not to exceed $200." CITY OF PALESTINE, TEX., CODE OF ORDINANCES, ch. 46, art. VI, sec. 46-186(b) (2020), https://library.municode.com/tx/palestine/codes/code_of_ordinances?nodeId=PTIICOOR_CH46EN_ARTVIJUABPR_DIV1GE. The ordinances sought to be enforced by the lawsuit also provided "defenses to prosecution."

An ordinance that makes a violation punishable by a fine or that makes conduct unlawful is penal in nature. *See State ex rel. Flowers v. Woodruff*, 200 S.W.2d 178, 181 (Tex. Crim. App. 1947) ("There can be no question but that the ordinance under consideration is penal in its nature, as it provides a fine up to $100 for each violation of any part of the ordinance."); *Consumer Serv. All. of Tex., Inc. v. City of Dallas*, 433 S.W.3d 796, 803 (Tex. App.—Dallas 2014, no pet.) (ordinance punishable by fine and that made violation an "offense" was penal ordinance); *Wild Rose Rescue Ranch v. City of Whitehouse*, 373 S.W.3d 211, 216 (Tex. App.—Tyler 2012, no pet.) (ordinance that in part authorizes citations and fines was "primarily penal in nature"); *Destructors, Inc. v. City of Forest Hill*, No. 2-08-440-CV, 2010 WL 1946875, at *3

20

(Tex. App.—Fort Worth 2010, no pet.) (mem. op.) (ordinance using term "unlawful" was penal). We conclude that the petition filed by Stutes sought to enforce, at least in part, penal ordinances. The city charter granted the city attorney the authority to enforce such ordinances.

Because the city charter impliedly authorized the city attorney—Stutes in this case—to file the instant lawsuit against Laza, and because the circumstances indicate a grant of actual authority to file the lawsuit, we cannot conclude that the trial court abused its discretion in concluding that Stutes met his burden under Rule 12 to show sufficient authority to prosecute the lawsuit against Laza on behalf of the City. As a result, the fact that the city council did not pass an ordinance or resolution as a prerequisite to filing the lawsuit is of no consequence and was not required.

Yet, Laza vigorously contends that, absent a city ordinance or resolution, Stutes had no authority to file the lawsuit. In support of this position, Laza relies on *City of San Antonio v. Micklejohn*, 33 S.W. 735 (Tex. 1895); *Stirman v. City of Tyler*, 443 S.W.2d 354, 358 (Tex. App.—Tyler 1969, writ ref'd n.r.e.); *City of Floydada v. Gilliam*, 111 S.W.2d 761, 764 (Tex. App.—Amarillo 1937, no writ); *Austin Neighborhoods Council, Inc. v. Bd. of Adjustment of City of Austin*, 644 S.W.2d 560 (Tex. App.—Austin 1982, writ ref'd n.r.e.); *Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). These authorities are inapposite.

*Micklejohn* decided the questions of whether (1) a resolution could be deemed an ordinance and (2) whether the city council could, by resolution, abolish an office that it created. *Micklejohn*, 33 S.W. at 736. The court held that "a public office (superintendent of public

21

works) established by an ordinance could not be abolished by resolution." *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 832 (Tex. 1970) (citing *Micklejohn*, 33 S.W. at 736). *Micklejohn* has no bearing on the Rule 12 issue before us.

In the same vein, *Stirman* was not a Rule 12 case. Instead, *Stirman* involved a condemnation proceeding brought by a city. *Stirman*, 443 S.W.2d at 356. The primary issue in *Stirman* was whether the city's condemnation of a fee to the surface estate was valid when the city did not pass a formal resolution expressing a desire to condemn the fee to the surface estate. *Id.* at 358. In 1969, the relevant law stated, "Any such city may acquire the fee simple title to any land or property when same is expressed in the resolution ordering said condemnation proceedings by the governing body." *Id.* at 357. The city charter expressly provided that all official acts of the city be by resolution or ordinance. *Id.* at 356. Because the city did not express its intention to condemn a fee simple title by means of a resolution, the trial court's authority was limited to the expropriation of an easement only. *Id.* at 359. This case does not involve a condemnation action, and the City's charter does not require authorization in the form of a resolution or ordinance in order for the city attorney to file a lawsuit on behalf of the City.

*City of Loydada v. Gilliam*, another eminent domain case, is likewise inapposite. The law in effect in 1937 permitted cities of less than 5,000 inhabitants to exercise the power of eminent domain when expressed by the governing authority "to take the fee in the lands so condemned." *Gilliam*, 111 S.W.2d at 764. In *Gilliam*, there was no proof of "an expression by the city council of the necessity for condemnation of the fee-simple title in the land." *Id.* As a result, the city

22

acquired only an easement over the property. *Id.* at 762. Because *Gilliam* deals with the requirements, in 1937, for a city to condemn a fee simple title in land, it does not apply here.

Laza also relies on *Austin Neighborhoods Council* in support of his argument that Stutes lacked authority to file suit on behalf of the City. *Austin Neighborhoods Council* involved the interpretation of a city zoning ordinance on which a building permit was issued by the Austin Building Department. Capitol Mortgage Bankers, Inc., an appellee, challenged appellants' standing to initially bring the appeal to the Austin Board of Adjustment from the building department's issuance of the building permit. *Austin Neighborhoods Council*, 644 S.W.2d at 562. Capitol Mortgage argued that appellants lacked standing because they suffered no unique or practical effect to themselves not suffered by the general public, nor were they an "officer, department, board, or bureau of the municipality affected" as their actions were not ratified or authorized by the City of Austin. *Id.* at 563. The appellate court found that appellants failed to show that they were aggrieved by the building permit and further failed to show that they were an "officer, department, board, or bureau of the municipality affected." *Id.* at 564. Although one appellant was a member of the Austin City Council, the court determined that he was before the court as a private individual and not as a representative of the people of Austin. *Id.* In so concluding, the court recognized that the city charter conferred authority on the council as a whole and not singularly on its members. *Id.*

Laza points to the fact that the Austin City Charter contained language similar to that of the Palestine City Charter. That language is quoted in that opinion as follows:

> There shall be a department of law, the head of which shall be the city attorney . . . The city attorney SHALL be the legal advisor of, and attorney for ALL of the

> officers and departments of the city, and HE SHALL REPRESENT THE CITY IN ALL LITIGATION AND LEGAL PROCEEDINGS . . . .

*Id.* This language merely points to the fact that the city attorney was authorized to represent the city in all litigation and legal proceedings. The language was used to illustrate the fact that an individual councilman had no such authority. *Id.* The court went on to state that it could find no "authority to be bestowed on [the councilman] to file independent actions challenging the actions of any agency of municipal government." *Id.* Further, the councilman did not show "any adoption or ratification of his actions by the city council in bringing [the] appeal. Such an affirmative act by the governing body of the city [was] required." *Id.*

Laza argues that, in this case, Stutes likewise required authorization from the city council to file the lawsuit. We do not believe the reasoning in *Austin Neighborhoods* applies here. *Austin Neighborhoods* was a case regarding standing, not an application of Rule 12. In this case, Stutes was the city attorney, not an independent councilman filing an independent action "challenging the actions of any agency of municipal government." And, as explained earlier, the city charter authorized the city attorney to file suit on behalf of the City.

Finally, in *Cook*, also cited by Laza, the court held that the City of Addison was not bound, or its rights limited in its ability to assess property owners, by expressions of intent contained in a memorandum from the Addison City Manager to use funds to improve other streets when those funds were assessed against owners of certain property fronting on a particular road. *Cook*, 656 S.W.2d at 657. The court based this conclusion on the statute in effect at the time, stating that "Article 1105b, Section 9, contains language directed to this very situation, i.e., 'no words or acts of any officer or employee of the city, or member of any

24

governing body shown in its written proceedings and records shall in any way affect the force and effect of the provisions of this Act.'" *Id.* Moreover, "[s]tatements by individual members of a council or board are not binding on a governmental body which may act only in its official capacity." *Id.* As a result, the court held, "[T]he city manager's memoranda do not affect the city's rights under Article 1105b to assess the property owners in the present case." *Id.* at 658.

As in the other cases cited by Laza, *Cook* was not a Rule 12 case. Beyond that, this case does not concern statements by an individual council member that are claimed to be binding on the City. The issue before us is whether Stutes, the city attorney for the City of Palestine, was authorized to file suit against Laza on behalf of the City. We find nothing in the language or reasoning of *Cook* or in the other cases cited by Laza that leads us to question our determination that the trial court acted within its discretion in determining that Stutes was so authorized. We overrule this point of error.

*(3)*     *Laza Procedurally Waived any Complaints Regarding the Trial Court's Denial of His Special Exceptions*

Laza contends that the trial court erred in denying his special exceptions based on the City's failure to plead a cause of action.

The record indicates that Laza specially excepted to the City's first amended original petition on November 28, 2016. More particularly, Laza excepted to paragraphs 7, 8, 9, 10, and 11 because those paragraphs did "not give fair notice of plaintiff's claim." Laza also excepted to paragraph VI of the petition "because plaintiff did not plead any of the elements of its cause of action." On March 3, 2017, Laza filed his first supplemental special exceptions to the City's first amended original petition. Laza's additional exceptions were aimed at paragraph VI of the

25

amended petition, in which he listed six reasons why he believed paragraph VI did not provide fair notice of the City's claim.

On March 24, 2017, the trial court issued its order on Laza's special exceptions and first supplemental special exceptions, sustaining Laza's special exceptions with respect to paragraphs 8(h) and 8(n) of the plaintiff's first amended original petition and ordering the City to replead regarding those paragraphs to specify the ordinance that Laza allegedly violated. The trial court likewise sustained Laza's special exception to paragraph 11 and ordered the City to replead to specify "who [was] affected by the Defendant's actions and what the danger to those persons [was]." The trial court overruled all other special exceptions. On April 3, 2017, the City filed its second amended original petition and request for temporary and permanent injunctions.

On May 10, 2017, Laza specially excepted to the City's second original amended petition. More particularly, Laza specially excepted to paragraphs 8 and 11 of the second amended original petition "because plaintiff's pleading [did] not give fair notice of plaintiff's claim." Laza did not obtain a ruling on his special exceptions to the City's second original amended petition.

On June 6, 2017, the City filed its third amended petition. Laza did not specially except to the City's third amended petition. On August 18, 2017, Laza filed his third amended answer and original counterclaim, which incorporated his special exceptions to the City's second amended original petition. Also, on August 18, 2017, Laza filed his fourth amended answer and first amended counterclaim, which incorporated his special exceptions to the City's second amended original petition. Finally, on August 21, 2017, Laza filed his fifth amended original

26

answer and second amended counterclaim, which incorporated his special exceptions to plaintiff's second amended original petition. The record does not include any special exceptions to the City's third amended original petition.

The City contends that Laza waived any complaint regarding the allegations in its third amended original petition by failing to file special exceptions to that pleading and to obtain a ruling.

Rule 90 of the Texas Rules of Civil Procedure provides that a party waives its right to complain about a pleading defect if it fails to complain of the defect by special exception:

> Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury or, in a non-jury case, before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account . . . .

TEX. R. CIV. P. 90. There is no dispute that Laza failed to specially except to the City's third amended petition. Laza claims, though, that, following the special exception ruling, the live pleading was the second amended original petition.[12] In support of this claim, Laza cites Rule 65 of the Texas Rules of Civil Procedure.[13] Laza fails to explain how that rule supports his argument. On the contrary, that rule supports the proposition that the City's third amended

---

[12]Laza makes this claim even though he acknowledges that the City later filed its third amended original petition, which he contends contains "many of the same errors and omissions as the second amended original petition."

[13]Rule 65 provides:

> Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause, unless some error of the court in deciding upon the necessity of the amendment, or otherwise superseding it, be complained of, and exception be taken to the action of the court, or unless it be necessary to look to the superseded pleading upon a question of limitation.

TEX. R. CIV. P. 65.

petition was the live pleading at the time of trial. The Texas Supreme Court has plainly stated that "amended pleadings and their contents take the place of prior pleadings." *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008). Accordingly, as a general rule, an amended pleading supersedes the original pleading. *Denton Cnty. Elec. Co-op., Inc. v. Hackett*, 368 S.W.3d 765 (Tex. App.—Fort Worth 2012, pet. denied); *see Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 54 (Tex. 2003).

We, therefore, conclude that the City's third amended petition was the live pleading at the time of trial. Because the record does not reflect that Laza specially excepted to any portion of the City's third amended petition, we conclude that Laza waived any "defect, omission or fault" in that pleading, "either of form or of substance." TEX. R. CIV. P. 90; *see Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex. 1989) ("In the absence of special exceptions or other motion, defendant waives the right to complain of such a defect if plaintiff establishes the trial court's jurisdiction before resting its case."); *In re C.A.*, No. 10-16-00351-CV, 2021 WL 409621, at *7 (Tex. App.—Waco Feb. 3, 2021, no pet.) (mem. op.); *Smith v. Grace*, 919 S.W.2d 673, 678 (Tex. App.—Dallas 1996, pet. denied); *Lewter v. Dallas Cnty.*, 525 S.W.2d 885, 886 (Tex. App.—Waco 1975, writ ref'd n.r.e.); *Ward v. Clark*, 435 S.W.2d 621, 623 (Tex. App.—Tyler 1968, no writ); *see also Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 764–65 (Tex. App.—Texarkana 2017, pet. dism'd).

We further conclude that, although Laza specially excepted to the City's second amended petition, those exceptions were likewise waived because Laza failed to seek a ruling on those

28

special exceptions.  *See Hartwell*, 528 S.W.3d at 765; *In re Estate of Tyner*, 292 S.W.3d 179, 185 (Tex. App.—Tyler 2009, no pet.).[14]

*(4)     Laza Failed to Preserve His Complaint of Jury Charge Error*

Laza also contends that the trial court erred in instructing the jury that the City's remedies of civil penalties and injunctive relief must be proven by a preponderance of the evidence.  Laza claims that the jury should have been instructed, instead, that clear and convincing evidence is required to show entitlement to those remedies.  Laza posits that, because he objected to the jury instructions, this issue has been preserved for our review.  We disagree.

"Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."  TEX. R. CIV. P. 274.  The test for preservation of jury charge error "ultimately asks 'whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.'"  *Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992)).  This is because "the 'purpose of Rule 274 is to afford trial courts an opportunity to correct errors in the charge by requiring objections both to clearly designate the error and to explain the grounds for complaint.'"  *Id.* (quoting *Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1987)).

On October 20, 2017, Laza filed multiple written objections to the court's proposed jury charge.  None of Laza's written objections to the court's proposed charge, though, complained of

---

[14]Laza cites *Texas Department of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974), for the proposition that a party need only specially except once based on the failure to plead a cause of action.  We do not read this case as standing for the proposition espoused by Laza.

the instruction regarding the burden of proof to show entitlement to civil penalties and injunctive relief. On the same day, the trial court held the charge conference, at which the trial court asked whether each attorney had a copy of the proposed charge. Laza was represented by two attorneys at trial. Both attorneys indicated that they had a copy of the charge, although one of Laza's attorneys indicated that he did not have an adequate opportunity to review the charge because "lots of things" were wrong with it. The court responded, "Well that's fine and you're going to make your objections to it because you've reviewed it." Counsel for Laza responded, "I . . . reviewed it." The court then noted that it had a "copy of objection to the jury charge that was filed [that] morning by defendant." After the trial court ruled on Laza's written objections to the charge, it asked whether the defendant had any further objections. Counsel for Laza made several additional objections to the charge. None of the additional objections complained of the burden-of-proof issue now before us.

Although Laza objected to much of the charge, he did not object to the instruction on preponderance of the evidence and did not request an instruction that would set out the standard of clear and convincing evidence.[15] As a result, Laza waived his complaint of error in the standard-of-proof instruction given to the jury. We overrule this point of error.

---

[15]Laza cites *Lopez v. Southern Pacific Transportation Co.*, 847 S.W.2d 330, 333 (Tex. App.—El Paso 1993, no writ), for the proposition that "a mere objection to the charge, standing alone, will preserve error as to a defective instruction." He, therefore, claims that his objections to the jury instructions were preserved on this issue. In *Lopez*, appellants objected to the failure of the charge to contain an instruction on a certain presumption, but the record did not reflect that such instruction was requested, tendered to, or ruled upon by the trial court. *Id.* The court held that "a mere objection to the charge, standing alone, will preserve error as to a defective instruction but will not preserve error as to an omitted instruction." *Id.* The appellants' failure to request or tender a proposed instruction as to the evidentiary presumption waived their complaint of error. *Id.* *Lopez* does nothing to advance Laza's appellate complaint.

*(5)*	*The Motion to Recuse Was Properly Denied*

Laza also contends that the trial judge exceeded his authority by failing to recuse himself and that the administrative judge erred in refusing to order the trial judge's recusal. Laza further complains that the trial court exceeded its authority by failing to follow the mandates of this Court's abatement order.

The procedural background of this case in this Court is important to a full understanding of Laza's complaint. We briefly outline that background here.

After Laza filed his notice of appeal in this Court on June 4, 2018, he filed a suggestion of bankruptcy on September 10, 2018. The case was administratively abated until its reinstatement on November 16, 2020. The clerk's record was filed November 16, 2020, and the reporter's record was filed November 19 and November 20, 2020. In his second motion for extension of time in which to file his brief, Laza made complaints about an omission from the reporter's record. The court reporter thereafter filed a supplemental reporter's record of the hearing on Laza's motion to show authority. Laza filed a third motion for extension of time in which to file his brief, complaining that the affidavit of Mike Alexander was missing from the supplemental reporter's record. The court reporter filed a second supplemental reporter's record, but the attached exhibit was that of Michael Hornes. Laza then filed a fourth motion for extension of time in which to file his brief, complaining that the hearing record included the wrong exhibit.

This Court thereafter issued an abatement order pursuant to Rule 34.6, subsections (e) and (f), of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 34.6(e), (f). The order

31

instructed the trial court to conduct an evidentiary hearing to determine precisely what portions of the record were claimed to be missing or inaccurate and whether the issue was one that could be resolved by agreement as contemplated by Rule 34.6(e)(1) of the Texas Rules of Appellate Procedure. We advised that, if the error or omission could not be corrected by agreement, then the trial court was to resolve the dispute in accordance with Rule 34.6(e)(2) of the Texas Rules of Appellate Procedure. The trial court was further instructed to take evidence on, and enter findings with respect to, each exhibit or portion of the record that was determined to be lost or destroyed.

Following the first of two evidentiary hearings on July 13, 2021,[16] Laza filed an emergency motion on August 26, 2021, seeking the trial court's recusal. Laza claimed, among other things, that the trial judge "interjected himself into the facts of this case by personally conducting ex-parte investigations, calling himself as a witness, testifying about his recollection of events, [and] interrogating witnesses based on his ex parte investigations."[17] Laza's motion

---

[16]On January 17, 2017, the judge of the First Administrative Judicial Region of Texas assigned the Honorable Dwight Phifer, Senior Judge of the 2nd Judicial District Court, to the 349th Judicial District Court of Anderson County, Texas, to hear cause number DCCV 16-356-349, *City of Palestine v. Jerry Laza*. On July 13, 2021, the presiding judge of the Tenth Administrative Judicial Region assigned the Honorable Dwight Phifer, Senior Judge of the 2nd Judicial District Court to the Judicial District Court of Anderson County, Texas, to the same cause number, this time on abatement by the order of this Court. The trial court did not sign any contested order prior to the second order of assignment.

[17]The fact that the trial judge had personal knowledge of what occurred at trial and therefore had unique knowledge of the record is not a basis for recusal under the Rule. The trial judge explained, on the record, that he had viewed the voluminous trial record to prepare for the abatement hearing and to enable the hearing to proceed efficiently. The trial court acted appropriately in speaking with court personnel about the record to prepare for the hearing. Canon 3.B.(8)(d) of the Code of Judicial Conduct specifically recognizes that a judge's communication with court personnel does not constitute an impermissible ex parte communication. TEX. CODE JUD. CONDUCT, Canon 3.B.(8)(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. C. The trial court's groundwork in preparing for the abatement hearing was conducted for the purpose of clarifying the issues and expediting the hearing. The trial court was, after all, tasked with determining the accuracy of the record. Allegations that his efforts in doing so formed the basis of a valid recusal motion are meritless.

was based solely on what the trial court stated on the record during the July 13 hearing. The second of the two evidentiary hearings was scheduled to commence on August 27, 2021.

The trial court declined to recuse and signed an order referring the motion to recuse to the Tenth Administrative Judicial Region. On September 27, 2021, the presiding judge of the Tenth Administrative Judicial Region issued an order denying the emergency motion to recuse. After conducting a hearing, the presiding judge found as follows:

> [T]he movant did not file the motion as soon as practicable after the movant knew the grounds stated in the motion. The undersigned found that the movant knew of these grounds at a previous hearing on July 13, 2021. The movant did not object or request the recusal of the judge at that hearing. The movant did not file this motion to recuse until August 26, 2021, the day before the August 27, 2021, hearing was scheduled to commence.

Rule 18a of the Texas Rules of Civil Procedure governs recusal of judges. *See* TEX. R. CIV. P. 18a. Under that rule, a party may file a motion asserting one or more grounds for recusal under Rule 18b. TEX. R. CIV. P. 18a(a)(2); *Barron v. State Att'y Gen.*, 108 S.W.3d 379, 382 (Tex. App.—Tyler 2003, no pet.). Among other things, the rule requires that the motion must be filed "as soon as practicable after the movant knows of the ground stated in the motion" and "must not be filed after the tenth day before the date set for trial or other hearing." TEX. R. CIV. P. 18a(b)(1)(A), (B). "If the motion to recuse is denied, the standard for review is abuse of discretion, and the denial may be reviewed on appeal from the final judgment." *Newsome v. Dretke*, No. 12-08-00105-CV, 2008 WL 4335111, at *1 (Tex. App.—Tyler Sept. 24, 2008, no pet.) (mem. op.) (citing TEX. R. CIV. P. 18a(f); *Barron*, 108 S.W.3d at 382). "A party who fails to file a motion which complies with Rule 18a waives the right to complain of a judge's refusal to recuse himself." *Spigner v. Wallis*, 80 S.W.3d 174, 180 (Tex. App.—Waco 2002, no pet.).

33

"Thus, the provisions of Rule 18a obligating a trial judge to either recuse himself or refer the motion to the presiding judge of the administrative judicial district never come into play unless and until a formal timely, written and verified motion to recuse is filed." *Newsome*, 2008 WL 4335111, at *2 (citing *Barron*, 108 S.W.3d at 383). As a result, a motion to recuse that does not comply with Rule 18a may be summarily denied without an oral hearing. TEX. R. CIV. P. 18a(g)(3)(A).

Here, the alleged grounds for recusal were known to Laza on July 13, 2021. Even so, Laza did not file his motion to recuse until August 26, 2021, the day before the evidentiary record hearing scheduled for August 27. Not only must a motion to recuse be filed more than ten days before the date set for hearing, but it must also be filed as soon as practicable after the movant knows of the ground stated in the motion. Under these circumstances, the presiding judge properly exercised his discretion in denying Laza's motion to recuse. We overrule this point of error.

To the extent Laza complains that the trial court failed to follow the mandates of this Court's abatement order, we conclude that this point of error is meritless and not adequately briefed. *See* TEX. R. APP. P. 38.1(i).

*(6)      There Is No Basis on Which to Vacate the Judgment*

In his final point of error, Laza asserts that this "Court Should vacate the Judgment and order a new trial given the multitude of fabricated documents that proliferate in the Record and the Trial Court's inability to adhere to any Rules of Professional Conduct or Civil Procedure." In support of this assertion, Laza has included a list in his brief of his claims regarding the

34

inadequacies of the record and/or falsifications of the record. This list also includes alleged inappropriate behavior and/or lack of knowledge by the trial judge, the administrative judge, trial court personnel, and the clerk of this Court. In short, Laza alleges extra-judicial creation of the record.

This point of error is wholly without merit. After having conducted two extensive evidentiary hearings regarding the record in this case, the trial court issued its report to this Court on December 14, 2021, in which it concluded, "There is no error or omission in the Appellate Record that is significant or would affect the resolution of this appeal." On December 28, 2021, this Court adopted each of the trial court's findings and its conclusion that there was no error or omission in the appellate record that was significant or that would affect the resolution of this appeal. We overrule this point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted: June 16, 2022
Date Decided: August 18, 2022